UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:07CV523-J

DELMAR L. FLEENOR                                                                                          PLAINTIFF

VS.

MICHAEL J. ASTRUE,
      Commissioner of Social Security                                                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Delmar Fleenor ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be vacated and the matter remanded for further proceedings.

## PROCEDURAL HISTORY

On March 10, 2005, Claimant filed application for disability insurance benefits, alleging that he became disabled as of February 28, 2005. After a hearing, Administrative Law Judge Nichols ("ALJ") determined that Mr. Fleenor's left collarbone repair, history of right carpal tunnel repair, and foot pain, were severe impairments, but that they did not prevent him from returning to his past relevant work as an automobile salesman . This became the final decision of the Defendant when the Appeals Council denied review on July 31, 2007.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence

1

supports the factual determinations of the ALJ. <u>Elam v. Commissioner</u>, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. <u>NLRB v. Columbian Enameling and Stamping Co.</u>, 306 U.S. 292 (1939); <u>Foster v. Bowen</u>, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

The central issue in this case concerns Mr. Fleenor's residual functional capacity. Residual functional capacity (RFC) is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, <u>Howard v. Commissioner</u>, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, <u>Cohen v. Secretary of HHS</u>, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing his or her RFC, <u>Her v. Commissioner</u>, 203 F.3d 388, 391-392 (6th Cir. 1999). In this case, an important factor in determining RFC is Mr. Fleenor's credibility, and plaintiff argues that the ALJ erred in evaluating the credibility of his testimony. SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. § 404.1529©) describes the kinds of evidence, including the factors below, that the adjudicator is to consider in addition to the objective medical evidence when assessing the

credibility of an individual's statements:

1) Daily activities;

2) The location, duration, frequency, and intensity of pain or other symptoms;

3) Precipitating and aggravating factors;

4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;

5) Treatment, other than medication, received for relief of pain or other symptoms;

6) Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

In assessing the credibility of plaintiff's testimony that he is able to stand for no more than 15-20 minutes, sit for no more than 15 minutes, and walk for no more than 10-15 minutes at a time, the ALJ noted that Mr. Fleenor's foot problems "are all of longstanding duration yet he was capable of working for many years despite these problems." Tr. 16. The ALJ also noted that Mr. Fleenor has had only conservative treatment, and he has conceded that his pain medications help him. The ALJ also pointed to treatment notes from July of 2006, which recorded that Mr. Fleenor complained that a drive to Virginia and "increased walking in the past month" had made his feet hurt worse. Tr. 181.

When he presented at the health center in October of 2005 because of his feet swelling and hurting, he said the problem had been "ongoing 10 yr." The doctor prescribed Orudis. Tr. 189. He visited the clinic in December of 2005 stating that Orudis helped him for a week and a half, but that now his feet are burning, and his right foot goes to sleep. Tr. 188. In January of 2006, the treatment notes record his statements that he was unable to exercise because of the pain in his feet,

and that he had gained 20 pounds since September because his feet hurt. Tr. 185-186. April of 2006, he complained that he was unable to tie his shoe because of his foot discomfort. Tr. 184. This progression supports Mr. Fleenor's claim that his foot problem, while longstanding, has worsened.

In support of his claim that his foot problems had worsened such that he no longer had the ability to do work requiring standing and walking, claimant offered the February 16, 2005 statement of his supervisor, John Flanagan, who reported observing Mr. Fleenor's limp and making adjustments to his work assignments so that claimant could be seated as much as possible and so that he could remove his shoes and elevate his feet. Mr. Flanagan stated that he had observed what appeared to be a worsening of the problems over the past year. Tr. 55. As to this evidence, the ALJ stated that Mr. Flanagan "does not have a medical degree or other expertise that might entitle him to comment on the claimant's functioning." Tr. 16.

The Sixth Circuit has previously considered the appropriate weight to be given the testimony of lay witnesses. In Lashley v. Secretary, 708 F.2d 1048, 1054 (6th Cir.1983), the court held that "[p]erceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians."  See  Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980);  Beavers v. Secretary, 577 F.2d 383, 386 (6th Cir.1978).  See also  Maisch v. Heckler, 606 F.Supp. 982, 991 (S.D.N.Y.1985) ("where it is not possible to reach a determination of disability based on expert medical opinion and evidence, subjective testimony by lay witnesses may be entitled to great weight if uncontradicted in the record.")

Mr. Fleenor's impairment, a pedal neuropathy, is supported by the records of his treating physicians. Under such circumstances, lay *testimony* is entitled to perceptible weight. The nature of the ALJ's statement regarding Mr. Flanagan makes it impossible to determine whether he was

rejecting Mr. Flanagan's information because it was not *sworn testimony* or simply because he was a layperson. Given that the issue of Mr. Fleenor's testimony regarding the worsening of his condition is so central to this case, it is necessary that this matter be remanded to permit the ALJ to address the ambiguity in this opinion.

An order in conformity has this day entered.